**James R. RAWLEY, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 53S00–9803–CR–153.

Supreme Court of Indiana.

Feb. 25, 2000.

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

James R. Rawley was convicted of the murders of Renee Rawley and Kristina Jenkins and was sentenced to two terms of life imprisonment without parole to run consecutively. In this direct appeal Rawley contends that the trial court erred by: (1) admitting statements he gave to police while in custody and (2) failing to comply with statutory and decisional law requirements in imposing his sentences of life without parole. We affirm the convictions, but remand for a new sentencing order.

**Factual and Procedural Background**

On August 23, 1996, police found two dead bodies in a trailer owned by Renee Rawley. Both were severely decomposed and could not be identified by sight, but police inferred that they were the bodies of the residents of the trailer, Renee and her daughter Kristina Jenkins. Both had been shot in the head with a .22 caliber gun and police found .22 caliber casings and a flat-

tened bullet in the trailer. Several items were missing, including two televisions, a computer, a game system, a cordless telephone, and Renee's van.

James Rawley, Renee's ex-husband, had reportedly threatened her, and the investigation soon focused on him. At the time, Rawley was living in Kentucky with Linda Carter. Police interviewed Carter and learned that Rawley had returned from Indiana on August 19 in Renee's van with a cordless telephone of Renee's and had sold the van a few days later. Further investigation revealed that Rawley had been in Indiana at the time of the murders and had pawned a game system, two televisions, and a computer in Madison, Indiana. A Browning .22 caliber gun had been stolen from Carter's neighbors and on August 20, Rawley had attempted to sell a .22 caliber gun to an acquaintance.

Rawley called Carter several times during the course of the investigation. After one of these calls Carter led police to an arranged rendezvous near Carter's home in Carroll County, Kentucky. Rawley was arrested at approximately 7:00 p.m. on August 25. Detective Swain of the Monroe County Indiana Sheriff's Department interviewed him in the Carroll County jail until 11:00 p.m. when Rawley requested an attorney and the interview was stopped. For two days Rawley was held in an isolation cell in Carroll County. On August 27, he was allowed to call either Carter or Sheriff Maiden of Carroll County. Rawley called Carter. Carter was upset by the murders and told Rawley that the police were threatening to arrest her. Rawley told Carter he would talk to Sheriff Maiden if Carter would be permitted to see him. Carter then called Maiden and reported that Rawley had called her and wanted to talk to him. After Rawley was again advised of his Miranda rights and signed a waiver, he spoke at length with Maiden until again invoking his right to counsel.[1]

In this statement, Rawley told Maiden that he had been in Indiana with Renee the weekend before she was killed. He claimed that they had spent Friday and Saturday together and that Renee had given him her van if he would make the payments on it. He also told Maiden that he had a .22 caliber gun and had thrown it in the river when he learned that police were looking for him in connection with Renee's murder. Finally, Rawley said he did not know who had killed Renee and Jenkins.

Later that same day, Rawley phoned Carter. Sheriff Maiden was at the time conducting a search on Carter's property for a gun. Rawley ended up speaking to Maiden and told Maiden that he had thrown a gun into a pond on Carter's property. A gun recovered from the pond proved to be the one stolen from Carter's neighbor and was conclusively determined to be the murder weapon. Rawley was convicted in a jury trial of two counts of murder. The trial court followed the jury's recommendation and sentenced Rawley to two terms of life imprisonment without parole.

## I. Rawley's Statements while in Custody

Rawley contends that the trial court erroneously admitted his statements to Sheriff Maiden because his interrogation continued after he requested an attorney and also because his waiver of rights was the result of "psychological coercion" by the police. More specifically, Rawley argues that because he was held incommunicado for forty-eight hours and then allowed to call only the Sheriff or Carter, who he contends was actively cooperating with the police, the police initiated contact with

---

1. Rawley stated on page 62 of the interview transcript that he wanted to "stop this now and try to talk to an attorney." Maiden nevertheless continued to question him for several more minutes. The trial court granted Rawley's motion to suppress all statements after his request for an attorney. However, at trial, Rawley stated that he would prefer the entire interview be admitted. Because Rawley requested the admission of this otherwise inadmissible portion of the interview, he cannot claim error to its admission on appeal.

Rawley and "effectively resumed interrogation" in violation of Rawley's Miranda rights. Rawley also contends that the waiver of rights he signed before his communication with Maiden was not knowing, intelligent, and voluntary because of police pressure on Carter and his incommunicado detention. The State replies that the statement was properly admitted because Rawley initiated the conversation with the police after asserting his right to counsel and there were no threats or promises made to obtain his waiver of rights or his statement. The State also argues that Carter was not Rawley's spouse or even his girlfriend, and therefore any threats against her would not rise to the same level of coercion as threats against a spouse. Moreover, holding a suspect incommunicado for forty-eight hours is claimed to be justified, indeed routine, in Carroll County where courts do not sit every day.

Carter's relationship to the police is controverted. Carter testified that there was none and that she contacted Sheriff Maiden at Rawley's request and was motivated to act only "because I wanted to know ... if he would tell me anything, I guess I was curious...." Rawley's version of these events is slightly different. He claims that when he called Carter, she was upset and crying and told him that the police were threatening to arrest her. Rawley further claims that it was Carter's idea, not his, that he talk to the Sheriff. Although the State may have plausible support for its position as to what seems at least an unusual series of events, we need not resolve these issues because any error in admitting Rawley's statements was harmless.

■ Violations of Miranda are subject to harmless error analysis under the standard established in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967): a conviction will not be reversed if the State can show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *See Houser v. State*, 678 N.E.2d 95, 102 n. 8 (Ind.1997). In this case, the State presented overwhelming evidence of Rawley's guilt. Rawley threatened Renee shortly before the crime; he was near Bloomington at the time of the crime; he pawned several items taken from Renee's trailer; he sold a van belonging to Renee; and shortly after the murders, he was seen with a gun similar to the one that killed Renee. Finally, police found the murder weapon in a pond near Carter's house after Rawley told them where he had thrown it in a telephone conversation that is not challenged on Miranda grounds.

■ Rawley argues that this evidence is not enough to establish harmless error because the outcome of the trial depended on Rawley's credibility which was destroyed by the prosecution's repeated references to Rawley's statements to Maiden. At trial, Rawley testified that he and Renee robbed a drug dealer shortly before her death and that they intended to run away together. Rawley claimed that when he returned from taking Renee's dogs to the pound he found Renee and Jenkins dead, panicked and fled. In support of his contention that admission of his dialog with Maiden irretrievably damaged his credibility, Rawley points to several items: (1) in his statement he told police the gun was in the Ohio River when actually it was in the pond near Carter's house; (2) he told Maiden he was in Indiana on Friday, but was forced to admit at trial that he did not get there until Saturday; (3) he stated that Renee gave him the van, but was forced to admit at trial that she did not; and (4) he admitted in his statement to lying to Carter about visiting Renee and to Maiden at the time of his arrest about the gun. Each of these varied from his account at trial. However, if the jury believed his testimony at trial, these minor discrepancies were explained by his unwillingness to admit to another crime, robbing the drug dealer. Overall, the inconsistencies between his statements to police and testimony at trial were minor and unlikely to affect the jury's verdict given the weight

of the physical evidence. We conclude that any error in admitting Rawley's statement was harmless.

## II. Sentencing

The trial judge issued a two-page sentencing order which stated that "the aggravating circumstances outweigh the mitigating circumstances" and sentenced Rawley to two consecutive life without parole sentences. Rawley contends that the trial court's sentencing order did not follow the statutory and decisional law requirements for a sentence of life without parole.

 In *Harrison v. State*, 644 N.E.2d 1243, 1261–64 (Ind.1995), this Court held that the trial court's sentencing order in a capital case requires greater specificity than in other cases. Requirements include: (1) identification of the mitigating and aggravating circumstances found, (2) the specific reasons for those mitigators and aggravators, (3) that these factors were balanced and evaluated, (4) that the State proved beyond a reasonable doubt one statutory aggravator, (5) that the trial court considered the jury's sentencing recommendation, and (6) the trial court's personal conclusion that the sentence was appropriate. *Id.* at 1261–62. Indiana Code § 35-50-2-9 sets out the same sentencing requirements for both death and life without parole sentences, and the State acknowledges that the *Harrison* requirements apply to sentences of life without parole. *See Ajabu v. State*, 693 N.E.2d 921, 936 (Ind.1998) ("The statute provides that life without parole is imposed under the same standards and is subject to the same requirements [as the death penalty]."); *see also Warlick v. State*, 722 N.E.2d 809, 811 (Ind.2000). Moreover, the State concedes that the sentencing order in this case does not comply with *Harrison*. Accordingly, we remand this case to the trial court for a new sentencing order.

## Conclusion

James R. Rawley's convictions for murder are affirmed. This case is remanded for a new sentencing order.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.