**Curtis HOLSINGER, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 49S00–9812–CR–750.**

Supreme Court of Indiana.

June 29, 2001.

Teresa D. Harper, Bloomington, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Curtis Holsinger was convicted of murder and robbery for killing two people and stealing money from their home. We uphold his conviction over his claims of prosecutorial misconduct and improper admission of hearsay evidence, finding the first not preserved and finding the evidence not hearsay with respect to the second. We also find that the trial court improperly imposed two consecutive sentences of life in prison without parole.

### Background

The facts most favorable to the verdict indicate that on January 21, 1997, Defendant Curtis Holsinger and Jessica Lopez visited Frank Dennis in Jasonville, Indiana. Defendant and Dennis decided to go to Indianapolis, planning to rob Chad Sloan who owed Dennis drug money. The three traveled to the residence of Sloan and Shirley Newsom. Defendant brought a knife and Sloan brought a gun.

Defendant, Dennis, and Lopez arrived at Sloan's residence and were allowed inside.

Dennis then drew his gun and aimed it at Sloan. Defendant tied Sloan up in the back bedroom and tied Newsom up in the living room. Defendant then stabbed Sloan multiple times with the pocketknife, killing him. Defendant and Dennis returned to the living room at which point Dennis shot Newsom, killing her.

Shortly thereafter, Defendant, Dennis, and Lopez drove to Hamilton, Ohio. When Defendant and Lopez returned to Indiana, they learned that the police were looking for them. Lopez went to the police on January 23 and gave them a statement, downplaying the role that she and Defendant played in the murder. The next day, Lopez returned to the police and gave another statement. In her second statement, Lopez implicated herself in the robbery and Defendant in the robbery and murder.

Defendant was charged with eight counts: Counts I and II, Murder [1] of Newsom and Sloan; Counts III and IV, Felony Murder [2] of Newsom and Sloan; Counts V and VI, Robbery of Sloan and Newsom, Class A felonies; [3] Count VII and VIII, Confinement of Sloan and Newsom, Class A Felonies. [4] A jury found Defendant guilty of all eight counts.

During the penalty phase, the jury found that the State proved two statutory aggravating circumstances beyond a reasonable doubt—murder during the commission of a robbery, [5] and the commission of multiple murders. [6] However, the jury recommended against a sentence of life in prison without parole.

The trial court merged count III with count I and count IV with count II. For counts I and II, the trial court imposed two sentences of life in prison without parole to be served consecutively. The court imposed four 20–year sentences for counts V, VI, VII, and VIII, all to run consecutively. *Id.*

### Discussion

### I

Defendant argues that the prosecutor committed misconduct in his closing argument and that the "trial court erred when it overruled his objection to the prosecutor's closing argument." Appellant's Br. at 19.

During defense counsel's closing argument, he referred to a knife that was found in the bedroom where Sloan's body was located. According to State witness Detective Pollard, the knife did not appear to have blood on it, but was not scientifically tested for blood. During closing argument, defense counsel suggested that the knife could have been the murder weapon:

> They [the State] weren't going to tell you about that knife. Why? Because it messes it up. If that knife's still back in the room, that pocket knife story goes out the window.... Why wasn't any testing done on that knife? Why wasn't this serologist allowed to at least wash it off, take a washing, make a test on it to see if it had blood on it? Wouldn't you want to know that? ... It's smudgy because they fingerprinted it. Whose fingerprints are on it? Nobody told you they didn't find prints.... [W]hose prints are on that knife? Are they [Defendant's]? No. We don't know. Somebody's prints are on there. You weren't told that. Why? Because that

**1.** Ind.Code § 35–42–1–1 (1993).

**2.** *Id.*

**3.** *Id.* § 35–42–5–1.

**4.** *Id.* § 35–42–3–3.

**5.** *Id.* § 35–50–2–9(b)(1)(G)

**6.** *Id.* § 35–50–2–9(b)(8)

might make that knife the murder weapon and it doesn't have [Defendant's] fingerprints on it. And, again, the pocket knife story on the highway goes out the window. Is there a doubt here? You bet. That's reasonable doubt.

(R. at 666.)

The State responded during its closing statement and the following exchange occurred:

[Prosecutor]: I've got to address something . . . boy, it sure sounded like to me that he told you folks that I withheld evidence.

[Defense Counsel]: I'll tell the jury right now that I did not say that. And I don't mean to imply—

[Prosecutor]: Well, you said, if we found prints we didn't tell you. The law requires that I provide anything that even resembles exculpatory evidence or anything that might show that the defendant's innocent. I have to give that to them. I give them truckloads of information and get nothing in return. But, part of that information, not only witness statements, but all the scientific—

[Defense Counsel]: Your Honor, I'm going to object to this. This is not commentary on the evidence, Your Honor. I'm going to object to this testimony.

[Trial Court]: Well, it's an abided response to your argument. Your objection is overruled. Keep it within the proper boundaries though, please.

[Prosecutor]: If there's even a little bit of evidence in there at all, a fingerprint that might have been found on that knife, [Defense Counsel] has just as much right to present that evidence as I do. I didn't withhold from you.

(R. at 675–76.)

■ Defendant argued that the prosecutor misstated the law regarding discovery in Indiana because the prosecutor implied that the State gives "truckloads" of information to the defense and "[gets] nothing in return." In fact, as Defendant points out, the Marion County courts have promulgated automatic discovery rules requiring that defendants also disclose certain information to the State. *See* Rule 7(3), Rules of Organization and Procedure of the Marion Superior Court, Criminal Division.

Defendant also maintains that the result of the prosecutor's argument was to make defense counsel appear to be deceptive while the prosecution hid nothing. Defendant states, "[t]his good guy/bad guy characterization of the prosecution and the defense functions has been condemned." Appellant's Br. at 22 (citing *Bardonner v. State*, 587 N.E.2d 1353 (Ind.Ct.App.1992), *transfer denied*). Defendant believes that he "was placed in a position of grave peril to which he should not have been subjected and was denied a fair trial. . . ." Appellant's Br. at 22.

■ Defendant failed to request an admonishment or a mistrial and therefore did not properly preserve this issue for appeal. As to the merits, the basic thrust of the prosecutor's statement was that the State is required to give the Defendant any exculpatory evidence that the State has in its possession. This was a correct account of the law and was offered in response to defense counsel's implication that the State was withholding information. The prosecution did misstate the law by telling the jury that a defendant is not required to give the State any information. But in light of overwhelming evidence of Defendant's guilt, allowing this statement over objection would have constituted harmless error.

II

Defendant contends that the trial court improperly allowed a witness's out-of-court

statement into evidence. The state responds by arguing the statement is not hearsay within the ambit of Indiana Evidence Rule 801(d)(1)(B).[7]

Lopez testified that she gave a statement to the police on the night that Defendant and she returned to Jasonville, Indiana. She testified that she lied in this first statement to minimize Defendant's and her role in the killing. The next day, Lopez made another statement to the police that implicated both Defendant and herself in the robbery and implicated Defendant in the homicide of Sloan. She testified at trial that she "felt bad" about lying during the first statement and that her second statement was the truth.

On the state's direct examination, Lopez implicated Defendant with statements that he had made to her. Lopez testified that she and Defendant bought gloves on the way to Sloan's house to avoid leaving fingerprints. She also testified that Defendant admitted to her that he killed Sloan and threw the knife out the window.

During Lopez's cross-examination, Defendant attempted to impeach Lopez's testimony by implying that she was lying. Defendant referred to Lopez's plea agreement, suggesting that Lopez was lying to get favorable treatment by the prosecutor. Defendant also referred to the two different statements that Lopez gave to the police, emphasizing that they were not consistent:

> [Defense Counsel]: ... After all this time, you haven't been sentenced?
>
> [Lopez]: Correct.

> [Defense Counsel]: Because if you don't follow the terms of the plea agreement then it will be withdrawn ...?
>
> [Lopez]: Correct.
>
> * * *
>
> [Defense Counsel]: Who determines, Ms. Lopez—anybody in this room—who determines whether or not you're telling the truth today to qualify and satisfy the requirement of this plea agreement.

(R. at 494–97.)

On redirect examination, to repair her credibility, the State asked Lopez to read portions of the second statement that she had given to the police. This statement regarding the gloves, the knife, and Defendant's confession were all consistent with her trial court testimony. Defendant objected that her out-of-court statement to police was hearsay and therefore inadmissible.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *See* Ind. Evidence Rule 801(c). Generally, hearsay is inadmissible. *See* Ind. Evidence Rule 802. Under Indiana Evidence Rule 801(d)(1)(B), a statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (a) consistent with the declarant's testimony, (b) offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, and (c) made before the motive to fabricate arose.

■ Here, Lopez's trial testimony was consistent with her second statement to the police. It was also offered to rebut an implied charge of fabrication; Defendant's

---

**7.** A statement is not hearsay if:

[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is. ... consistent with the declarant's testimony, offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, and made before the motive to fabricate arose. Ind. Evidence Rule 801(d)(1)(B).

cross-examination implied that Lopez lied during her testimony. Therefore, the statement was properly admissible if it was made before a motive to fabricate arose.

Whether a motive to fabricate has arisen is a fact sensitive issue. *See Stephenson v. State,* 742 N.E.2d 463, 475 (Ind.2001); *Sturgeon v. State,* 719 N.E.2d 1173, 1178 (Ind.1999). We do not automatically find that a participant in a crime has a motive to fabricate, even where the police are inquiring into the declarant's involvement in the crime. *See Stephenson,* 742 N.E.2d at 475; *Sturgeon,* 719 N.E.2d at 1180 (finding no motive to fabricate where "there [was] no evidence tending to implicate [the declarant] in [the] murder and therefore no evidence he had a motive to lie about [the defendant's] involvement.").

While Lopez might have had a motive to lie in her statement of January 24th, she did not have a motive to implicate Defendant in the murder. There was no evidence suggesting—and Defendant does not contend—that Lopez herself killed the victims. The statement she read at trial contradicted her statement from the day before, shifting blame from Dennis to Defendant. To the extent she was guilty of robbery and felony murder, her culpability would have been the same whether either Defendant or Dennis had killed Sloan. We find no motive on Lopez's part to fabricate Defendant's role in Sloan's murder. There is no contention that she tried to minimize her own; indeed, she implicated herself in the robbery and, as a consequence, felony murder.[8] Moreover, in regards to the crime in which she did have a motive to fabricate—the robbery—she implicated herself.

### III

Defendant argues that the trial court improperly sentenced him. He contends that the trial court did not consider mitigating circumstances that were "plainly presented," and that the court improperly considered non-statutory aggravating factors. Defendant also argues that his sentence was manifestly unreasonable. *See* Appellant's Br. at 8.

The State charged two aggravating circumstances, intentional murder during the commission of a robbery and the commission of multiple murders. *See* Ind.Code §§ 35–50–2–9(b)(1)(G) and 35–50–2–9(b)(8). Defendant introduced evidence to demonstrate the following mitigating circumstances: Youthful age; domination by another; troubled childhood; lack of a criminal history; intoxication; surrender to and cooperation with the authorities; and remorse.

The jury found that the State had proven the two aggravating circumstances beyond a reasonable doubt,[9] but recommended against a sentence of life imprisonment without parole. Contrary to the jury's recommendation, the trial court imposed a sentence of life in prison without parole.

In the sentencing order, the trial court found, in accordance with the jury find-

---

**8.** Felony murder occurs when a person "kills another human being while committing or attempting to commit ... robbery." Ind. Code § 35–42–1–1(2) (1993). The State need not prove intent to kill in a felony murder charge, only the intent to commit the underlying felony. *See Palmer v. State,* 704 N.E.2d 124, 127 (Ind.1999).

**9.** The fact that the jury made affirmative findings that the charged aggravating circumstances had been proved beyond a reasonable doubt distinguishes this case from *Farber v. State,* 729 N.E.2d 139 (Ind.2000).

ings, that the State proved the existence of the two aggravating circumstances beyond a reasonable doubt. The trial court listed other aggravating factors before concluding that life in prison was appropriate:

> The [c]ourt finds that the factual circumstances of the murders are particularly heinous and aggravating. A great deal of discussion and planning took place.... The vicious nature of the killings was particularly disgusting and aggravating.... [Defendant] ... stabbed and slashed Chad Sloan with a ·knife twenty-nine times.... [Defendant] was a major participant in the murder of Shirley Newsom.... [Defendant] had tied her up knowing that [Dennis] was going to kill her.... Then [Defendant] hid his involvement in the murders by discarding the clothes he was wearing and the murder weapon he used.... [Defendant's] action reveal such abhorrent behavior that life imprisonment without parole is the only appropriate sentence.

(R. at 229–30.)

The trial court was not as thorough in its treatment of the mitigating circumstances. It only briefly stated the mitigating factors it considered:

> The [trial court] considers all the evidence presented to the jury at the trial and sentencing proceeding, and any mitigating circumstance inherent in those proceedings. The [trial court] also considers the defendant's statement expressing his condolences to the victims' family members and the arguments of his attorney that the defendant was an accessory, that his role was minor compared to that of his accomplice, Frank Dennis, and that he was acting under substantial domination of Frank Dennis.

(R. at 230.)

Defendant challenges the judge's findings in two respects. He argues that the sentencing order violates *Bivins v. State,* 642 N.E.2d 928 (Ind.1994), *cert. denied,* 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996), because it relies on non-statutory aggravating circumstances. And he also contends that the order violates *Harrison v. State,* 644 N.E.2d 1243 (Ind.1995), in its failure to give specific consideration to mitigating circumstances.

### A

■ A sentence of life imprisonment without parole is imposed under the same standards and is subject to the same requirements as the death penalty. *See Pope v. State,* 737 N.E.2d 374, 382 (Ind. 2000), *reh'g denied; Nicholson v. State,* 734 N.E.2d 1047, 1048 (Ind.2000), *reh'g denied; Rawley v. State,* 724 N.E.2d 1087, 1091 (Ind.2000); *Ajabu v. State,* 693 N.E.2d 921, 936 (Ind.1998). Defendant contends that the trial court considered non-statutory aggravating circumstances in violation of *Bivins,* 642 N.E.2d at 955. In *Bivins,* this Court held that the aggravating circumstances in a capital case are narrowed to those charged by the State and found beyond a reasonable doubt. *Id.* "When the death sentence is sought, courts must henceforth limit the aggravating circumstances eligible for consideration to those specified in the death penalty statute, Indiana Code Section 35–50–2–9." *Id.*

■ The trial court's analysis of the aggravating factors of Defendant's crime was not limited to statutory factors. The trial court listed non-statutory factors that it found "particularly heinous and aggravating" including the planning of the crime by Defendant, that Defendant hid his involvement, the number of times Defendant stabbed the victim, and that Defendant was a major participant. The trial court concluded the list of non-statutory aggra-

vators by stating that Defendant's actions were so "abhorrent" that "life imprisonment without parole is the only appropriate sentence." While we may agree with the trial court that Defendant's behavior was abhorrent, a trial court may not consider non-statutory aggravating circumstances when imposing life in prison without parole.

### B

■ We held in *Harrison v. State* that the trial court must offer a detailed explanation of the factors and the weighing process that lead to a death sentence. 644 N.E.2d 1243, 1262 (Ind.1995). Because a sentence of life in prison without parole is imposed under the same standards as the death penalty, *see supra* Part III–A, we require the same specificity from a trial court sentencing a defendant to life in prison without parole as we would a court sentencing a person to death. *Pope*, 737 N.E.2d at 382; *Nicholson*, 734 N.E.2d at 1048; *Rawley*, 724 N.E.2d at 1091; *Ajabu*, 693 N.E.2d at 936. In *Harrison*, we set out the following steps:

> The trial court's statement of reasons (i) must identify each mitigating and aggravating circumstance found, (ii) must include the specific facts and reasons which lead the court to find the existence of each such circumstance, (iii) must articulate that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence, and (iv) must set forth the trial court's personal conclusion that the sentence is appropriate punishment for this offender and this crime.

644 N.E.2d at 1262 (citations omitted). *See also Ajabu*, 693 N.E.2d at 940.

During the sentencing phase, the trial court only touched on some of the many mitigating circumstances Defendant introduced. In this respect, the trial court failed to fulfill the requirements of *Harrison*'s first and second steps; the sentencing order does not explicitly indicate which mitigating circumstances the trial court found, nor does it explain the specific facts and reasons that led the court to find the existence of whatever mitigating circumstances it did find. This is a violation of the specificity requirement of *Harrison*.

The sentencing order in *Harrison* was also found inadequate because it was not specific enough. The trial court in *Harrison* identified what the court found to be mitigating circumstances, but "[did] not set forth specific facts and reasons which lead the court to find the existence of each aggravating and mitigating circumstance." 644 N.E.2d at 1263.

■ In some respects, the sentencing order taken as a whole was more specific than the one in *Harrison*,[10] but it is much less specific about the mitigating circumstances. Indeed, it is impossible to tell whether the trial court found any mitigating circumstances to exist or, if so, the extent to which it assigned any weight to them. "We require such specificity in a sentencing order ... to insure the trial court considered only proper matters when imposing sentence, thus safeguarding against the imposition of sentences [that] are arbitrary or capricious, and to enable the appellate court to determine the reasonableness of the sentence imposed." *Id.* at 1262 (citing *Daniels v. State*, 561 N.E.2d 487, 491 (1990)). Furthermore, failure to find mitigating circumstances where sup-

---

**10.** The trial court's sentencing order stated that it considered the jury's recommendation; established that the trial court found that the State proved the aggravating circumstances beyond a reasonable doubt; and contained the personal conclusion of the trial court that life imprisonment without parole is the appropriate sentence.

ported by the record may reasonably give rise to a belief they were overlooked and not properly considered. *See Scheckel v. State,* 620 N.E.2d 681, 686 (Ind.1993); *Jones v. State,* 467 N.E.2d 681, 683 (Ind. 1984).

### C

 We vacate the sentence imposed by the trial court because it relied on non-statutory aggravating circumstances in violation of *Bivins* and because it was imposed pursuant to a sentencing order that did not meet the requirements of *Harrison.* Where we find an irregularity in a trial court's sentencing decisions, we have the option to remand to the trial court for a clarification or new sentencing determination; to affirm the sentence if the error is harmless; and to reweigh the proper aggravating and mitigating circumstances independently at the appellate level. *See Bivins,* 642 N.E.2d at 957. Here we elect to engage in appellate reweighing.

 To determine the appropriate sentence, we will first consider the sentence of life in prison without parole. Before a sentence of life without parole can be imposed in this case, the statute requires the State to prove beyond a reasonable doubt at least one aggravating circumstances listed in subsections (b)(1) through (b)(15) of Indiana Code § 35–50–2–9 (Supp.1996). Here the State supported its request for life without parole with the following aggravating circumstances: (1) intentional murder during the commission of a robbery, Indiana Code § 35–50–2–9(b)(1)(G); and (2) the commission of multiple murders, Indiana Code § 35–50–2–9(b)(8). Both the jury and the trial court found that the State had met its burden of proof with respect to both these aggravating circumstances and Defendant makes no claim to the contrary.

The statute then requires that any mitigating circumstances be weighed against any properly proven aggravating circumstances. As noted, the trial court did not identify any mitigating circumstances. Again as noted, Defendant claimed the existence of the following mitigating circumstances: his youthful age; crime committed while under the domination of another; his troubled childhood; his lack of criminal history; his intoxication; his surrender to and cooperation with the authorities; and his remorse.

We assign little if any weight to the proffered mitigators of intoxication, cooperation with authorities, and remorse. The record demonstrates that Defendant engaged in behavior exhibiting a significant degree of physical and intellectual skill, *e.g.,* he purchased gloves on the way to Indianapolis. His surrender and cooperation came only after he learned that the police were looking for him. *See Games v. State,* 535 N.E.2d 530, 545 (Ind.) (giving little weight to the fact that defendant surrendered where defendant's apprehension was "nearly inevitable"), *cert. denied,* 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158 (1989). And there is nothing of record to suggest that his remorse was out of the ordinary. *See Evans v. State,* 727 N.E.2d 1072, 1083 (Ind.2000) (assigning little weight to the defendant's remorse in light of the brutal nature of the victim's death).

We assign weight in the low range to the proffered mitigators of troubled childhood and crime committed under the domination of another. As to Defendant's childhood, there was evidence that his mother had been charged with neglect and abandoned the family when he was two years old; that his father was suspected of neglect by child welfare authorities; and that some of his behavioral problems in school were traced to his being undernourished. *See Timberlake v. State,* 690 N.E.2d 243, 264

(Ind.1997) (acknowledging that being brought up in a dysfunctional family may be weighed as a mitigating factor) *cert. denied*, 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). We do not accept Defendant's claim that he committed the crimes in this case while under the domination of Dennis; our review of the record demonstrates that he was a willing participant in the crimes. At the same time, we accept Defendant's argument that Dennis was the instigator and leader of this criminal episode.

We assign weight in the medium-range to the proffered mitigators of defendant's youth and his lack of criminal history. Defendant was 19 at the time of these crimes. *Brown v. State*, 720 N.E.2d 1157, 1159 (Ind.1999) (" 'defendant's youth, although not identified as a statutory mitigating circumstance, is a significant mitigating circumstance in some circumstances.' ") (quoting *Carter v. State*, 711 N.E.2d 835, 842 (Ind.1999)). The pre-sentence investigation in this case indicated that defendant had no adult or juvenile criminal history. (R. at 207.) *See Widener v. State*, 659 N.E.2d 529, 534 (Ind.1995) (finding 17–year–old defendant's lack of criminal history to be a mitigating factory); *see also Baird v. State*, 604 N.E.2d 1170, 1182 (Ind.1992) (weighing lack of criminal history as a mitigating circumstance in the medium range), *cert. denied*, 510 U.S. 893, 114 S.Ct. 255, 126 L.Ed.2d 208 (1993).

In weighing the aggravating and mitigating circumstances here, we find the aggravating circumstances to outweigh the mitigating circumstances.

Next, the statute requires that the jury's recommendation be considered. Ind.Code § 35–50–2–9(e)(2). Here, as noted, the jury unanimously recommended against a sentence of life without parole. This is particularly significant because this is the same jury that unanimously found Defendant guilty of murder, robbery, and confinement and was prepared to accept its role as the "conscience of the community" in rejecting the State's request for life without parole. *See Saylor v. State*, 686 N.E.2d 80, 87 (Ind.1997) (quoting *Peterson v. State*, 674 N.E.2d 528, 543 (Ind.1996), *cert. denied*, 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998)), *cert. denied*, 525 U.S. 831, 119 S.Ct. 84, 142 L.Ed.2d 66 (1998). Unlike the *Saylor* and *Peterson* cases where we affirmed death sentences notwithstanding jury recommendations against death, here (i) the trial court improperly relied upon non-statutory aggravating circumstances, (ii) there was no identification or analysis by the trial court of any mitigating circumstances, and (iii) our independent weighing has identified two mitigating circumstances, each of medium weight, as well as several additional mitigating circumstances of lesser weight. When these three considerations are juxtaposed with the unanimous rejection by the jury of the State's life without parole request, with all that such rejection imports, we conclude that life without parole is not an appropriate sentence here.

■■■ We proceed to determine the defendant's sentence for the two murders under the general sentencing statutes. At the time these crimes were committed, the standard or presumptive sentence for murder established by the Legislature was 55 years to which the court has the authority to add not more than 10 years for aggravating circumstances and from which the court has the authority to subtract not more than 10 years for mitigating circumstances. Unlike sentencing under the death penalty and life without parole statute, the trial court is not limited to considering aggravating circumstances specified in the statute. As such, we here consider the additional aggravating circumstances

identified by the trial court and described above as well as the aggravating circumstances and the mitigating circumstances discussed during our analysis of the propriety of the life without parole sentence. We find the aggravating circumstances outweighed the mitigating circumstances by a sufficient magnitude that the maximum sentence of 65 years for murder should be imposed on each count. We order the sentences on these two counts to be served concurrently.

 Defendant also challenges the propriety of the four consecutive 20-year sentences for the two counts of robbery and two counts of confinement. The trial court entered judgment on these counts as Class B felonies. The presumptive sentence for a Class B felony is ten years. *See* Ind. Code § 35-50-2-5 (1993). A sentencing court may add up to ten years for aggravating circumstances or subtract up to four years for mitigating circumstances. *Id.* We agree with the trial court, for the reasons stated above, that the weight of the aggravating and mitigating factors justifies·the maximum sentence of 20 years for each count of robbery and confinement. We order the sentences on these four counts to be served concurrently.

 Finally, we find that the aggravating circumstances discussed above warranting fully enhanced sentences on the murder, robbery, and confinement counts outweigh the mitigating circumstances discussed above by a sufficient magnitude that the concurrent sentences for the robbery and confinement counts should be served consecutive to the concurrent sentences for the murder counts.

### Conclusion

We affirm Defendant's convictions. We vacate the sentences imposed by the trial court and remand with instructions to impose concurrent sentences of 65 years on each of Counts I and II and concurrent sentences of 20 years for each of Counts V, VI, VII, and VIII. The concurrent 20-year sentences for Counts V, VI, VII, and VIII are to be served consecutively to the concurrent 65-year sentences for Counts I and II.

SHEPARD, C.J., and RUCKER, J., concur.

BOEHM, J., concurs in parts I and III and concurs in result in part II with separate opinion.

DICKSON, J., concurs in part I, concurs in result in part II, and dissents in part from part III with separate opinion.

DICKSON, Justice, concurring in part and dissenting in part.

I concur in Part I, concur in result with Part II, and dissent from Part III of the majority opinion.

As to Part I, I write separately to emphasize that a defendant's failure to request an admonishment, standing alone, does not necessarily result in waiver. Although *Dresser v. State,* 454 N.E.2d 406 (Ind.1983) advises that admonishment is the "correct procedure to employ against an improper argument," *id.* at 407, it continues with the following important qualification: "Where it is obvious, from the nature and degree of misconduct, that no admonishment could suffice, the motion for one may be dispensed with." *Id.* at 408; *see also Leach v. State,* 699 N.E.2d 641, 644 n. 4 (Ind.1998) ("We disagree with the State and agree with the defendant that, in cases such as this, an instruction will not cure the error.") *Dresser* recognizes that merely objecting to improper argument is not enough and advises in general that the correct procedure is to request admonishment followed by a motion for mistrial, but it expressly acknowledges that a request

for an admonishment is not necessary in some circumstances. Neither *Robinson v. State*, 693 N.E.2d 548 (Ind.1998), nor *Brown v. State*, 572 N.E.2d 496 (Ind.1991), hold to the contrary. Although the language in both is "the failure to request an admonishment or move for a mistrial results in waiver of the issue," *Robinson*, 693 N.E.2d at 552; *Brown*, 572 N.E.2d at 498, in both cases, the defendants not only failed to seek an admonishment but also failed to move for mistrial. When an admonishment would be futile, the failure to request one does not preclude appellate review of a denial of an otherwise timely motion for mistrial.

With respect to Part II, I agree with the concurring in result opinion of Justice Boehm that the admission of Lopez's prior consistent statement was harmless error.

As to Part III of the majority opinion, I agree that the trial court's sentence of life imprisonment without parole was improperly based on non-statutory aggravating circumstances, and that it must be vacated. I am unable, however, to join the majority's evaluation of the trial court's consideration of the evidence related to mitigating circumstances, and I disagree with the sentence imposed.

Contrary to the majority's conclusion in Part IIIB, I believe that the trial court's explanation was adequate as to mitigating circumstances. The sentencing statement advises that the trial court gave consideration to the defendant's expressions of condolences, his claim that his role as an accessory was relatively minor, and his contention that he was acting under substantial domination of another. A sentencing judge is not obligated to make an affirmative finding expressly negating each potentially mitigating circumstance. *Crawley v. State*, 677 N.E.2d 520, 523 (Ind. 1997). The determination that a circumstance is mitigating is within the trial court's discretion, and the court is not obligated to explain why it finds a circumstance not to be mitigating. *Taylor v. State*, 681 N.E.2d 1105, 1112 (Ind.1997). The trial court is not required to give the same weight to proffered mitigating circumstances as the defendant does. *Thacker v. State*, 709 N.E.2d 3, 10 (Ind.1999). I cannot fault the trial court's consideration of mitigating circumstances. Its sentencing statement here is easily equivalent to or much more detailed than many other sentencing statements that we have affirmed.

Having determined that the sentence imposed by the trial court was erroneous, the majority elects to engage in appellate reweighing to determine the sentences to be imposed and expresses its evaluation by assigning various general weights to each aggravating and mitigating circumstance found. While some members of this Court have often chosen to employ this method of analysis, this should not be understood as the exclusive or prescribed methodology for trial or appellate sentencing evaluations.

Matters that may be appropriate for consideration are extraordinarily diverse and often defy quantification or precise analogous comparison to opposing considerations. Determining the appropriate criminal sentence is an act of subjective judgment, the quintessence of a judge's function. The analysis cannot be circumscribed to any single mathematical formula or methodology. The requirement of general sentencing statements to explain the sentencing decision assures fairness and propriety, and permits judicial review. But reasonable latitude is permitted in the way trial and appellate judges undertake to evaluate and determine the sentences to be imposed.

With respect to the majority's reweighing of the aggravating and mitigating cir-

cumstances and consideration of the jury's recommendation, I agree with the conclusions that the aggravating circumstances outweigh the mitigating circumstances but that life without parole is not an appropriate sentence. I disagree, however, with the decision to order that the sentences for murder be served concurrently. Notwithstanding the mitigating circumstances found by the majority, the fact that the defendant was convicted of killing two people weighs heavily in my judgment. For the two murder counts, merely imposing the equivalent of a single fully enhanced sentence is insufficient. I would require that sentences on the murder counts be served consecutively to each other and consecutively to the concurrent twenty-year sentences for the other counts.

BOEHM, Justice, concurring in result.

I concur in Parts I and III. I concur in result in Part II because although I believe that it was error to admit Lopez's prior consistent statement, I believe that error was harmless.

Indiana Rule of Evidence 801(d)(1)(B) provides that a prior consistent statement may be admitted to rebut a charge of fabrication if it was made before the motive to fabricate arose. Because I believe that Lopez's statement to police was made after her motive to fabricate arose, I would conclude that it was error for the trial court to admit that statement.

I agree with the majority that we do not "automatically" find that a participant in a crime has a motive to fabricate. *Stephenson v. State,* 742 N.E.2d 463, 475 (Ind. 2001); *Sturgeon v. State,* 719 N.E.2d 1173, 1180 (Ind.1999); *cf. United States v. Awon,* 135 F.3d 96, 100 (1st Cir.1998) (motive to fabricate, namely, a desire for leniency, pre-dated plea negotiations); *Farris v. State,* 732 N.E.2d 230, 233 (Ind.Ct.App. 2000) (no question that accomplice with

familial relationship to defendant had motive to fabricate); *McCray v. State,* 122 Md.App. 598, 716 A.2d 302, 308 (1998) (noting that accomplice's motive to fabricate existed from the moment that the robbery and murder, in which she was admittedly involved, took place). I also agree that whether a motive to fabricate has arisen is a fact sensitive issue. *Stephenson,* 742 N.E.2d at 475; *Sturgeon,* 719 N.E.2d at 1178. However, after comparing the facts of this case to those of previous cases considered by this Court, I would arrive at a different result.

The majority stresses the facts that: (1) no evidence was presented that suggested that Lopez herself committed the murders; and (2) Lopez admitted her role in the robbery, and therefore opened herself up to charges of robbery and felony murder. However, it is undisputed that Lopez accompanied Holsinger to the crime scene, stood by while two victims were murdered, participated in the robbery of the victims, and fled with Holsinger to another state. Only after learning that police were searching for both Lopez and Holsinger did Lopez voluntarily go to the police to give a statement. In her first statement, she attempted to minimize the roles that both she and Holsinger played in the crimes. In her second statement, given the next day, she admitted her role in the robbery and implicated Holsinger in the murder and robbery. Lopez's voluntary statements to police included an admission of her culpability in the crimes, but they also minimized her role vis-á-vis the other participants and set the stage for her eventual plea agreement. Before she voluntarily spoke to police, Lopez knew that she was wanted for questioning in connection with these crimes. It seems reasonable to conclude that she decided that a proactive approach was her best bet to secure a reduced sentence.

This Court recently considered a different fact pattern in *Stephenson.* In that case, the accomplice/witness, Dale Funk, had a level of involvement in a triple murder comparable to Lopez's here. *Stephenson,* 742 N.E.2d at 470–72. However, Funk's prior consistent statement was not a voluntary admission to police. *Id.* at 472–73. Rather, it was a part of a conversation with an uninvolved third party a few days after the crime. Funk received no prosecutorial benefit for his testimony. *Id.* at 475. Thus, although I agree with the conclusion in *Stephenson* that Funk had no motive to fabricate when he made his prior consistent statement, I believe that the differences in the fact patterns justify a different result in this case.

The facts of *Thompson v. State,* 690 N.E.2d 224 (Ind.1997), are analogous to this case. The accomplice/witness, Douglas Percy, voluntarily went to police and made a statement implicating Jerry Thompson in a double murder and robbery. *Id.* at 228. Percy admitted participating in the robbery after Thompson unexpectedly shot the victims. *Id.* Pending charges against Percy for another felony were dismissed in exchange for his testimony against Thompson. *Id.* Given these facts, we noted that admission of Percy's statement to police consistent with his testimony was arguably improper because "Percy had every reason to shift culpability to Thompson while minimizing his own involvement." *Id.* at 232 n. 8; *accord Bouye v. State,* 699 N.E.2d 620, 625–26 (Ind.1998) (accomplice's motive to fabricate arose at the time of the crime).

I would find that Lopez had a motive to fabricate before she made her voluntary statement to police. I would therefore hold that admission of her prior consistent statement was error. However, given the

other evidence against Holsinger, I would find the error harmless.