Bryce D. POPE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02S00–9807–CR–411.

Supreme Court of Indiana.

Oct. 25, 2000.

Patrick E. Chavis III, Susan D. Burke, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

RUCKER, Justice

A jury convicted nineteen-year-old Bryce Pope of two counts of murder, two counts of felony murder, and one count of robbery in connection with the shooting deaths of Richard Dergins and his wife Sara. The trial court sentenced Pope to two consecutive terms of life in prison without parole for each murder conviction and to a term of fifty years for the robbery conviction to be served consecutively to the life terms. The trial court did not impose sentences on the felony murder convictions. In this direct appeal Pope raises six issues for our review which we rephrase as follows: (1) did the trial court err in refusing Pope's tendered jury instruction concerning the effect of a prior conviction on witness credibility; (2) did the trial court abuse its discretion in refusing to allow into evidence an exhibit of bullets and related testimony that the bullets may have looked similar to those recovered at the crime scene; (3) was Pope denied a fair trial because the trial court did not supply the jury with a verdict form advising that it could exercise mercy by recommending a term of years even if the State proved beyond a reasonable doubt the statutory elements for life without parole; (4) did the trial court err in reading an instruction that alleged aggravating circumstances conjunctively as well as alternatively; (5) was the jury properly instructed that the State was required to prove an intentional killing to support one of the aggravating circumstances for life without parole; and (6) did the trial court consider non-statutory aggravating circumstances when imposing sentences of life without parole.

We affirm the convictions for murder and robbery but remand for a clarification of the trial court's sentencing order.

### Facts and Procedural History

The facts most favorable to the verdict show that Pope was a neighbor of Richard and Sara Dergins. He was a friend of the Dergins' teenage son and at times spent the night at the Dergins' home. Pope was aware the couple kept large sums of money in the house. In the afternoon hours of August 29, 1997, Pope, along with sixteen-year-old Aaron Thomas, went to the Dergins' home purportedly to return a hand tool that Pope had borrowed earlier. Pope was armed with a .38 caliber revolver, and Thomas was armed with a .380 caliber semi-automatic pistol. When Mr. Dergins answered the door, Pope produced the handgun and ordered him back into the house. When Mr. Dergins pleaded "you don't want to do this," Pope responded

"shut up and where's the money at." R. at 755–56. After ordering Mr. Dergins throughout the house at gunpoint, Pope retrieved a black pouch containing an undetermined amount of cash. Pope then ordered both Richard and Sara Dergins to lie face down on the floor and fired his weapon. Arriving on the scene police recovered two .35 caliber bullets which were designed to be fired from a .38 caliber revolver but could not have been fired from a .380 caliber semi-automatic pistol. A subsequent autopsy revealed that both Richard and Sara died as a result of a gunshot wound to the back of the head. Later bragging to a friend about the events of the day Pope proclaimed, "I'm a murderer." R. at 690.

Pope was charged with two counts of murder, two counts of murder in the perpetration of a robbery, and one count of robbery resulting in serious bodily injury. In a separate request for a sentence of life without parole, the State alleged as an aggravating circumstance that Pope committed a multiple murder and that he committed an intentional killing while committing robbery. After a three-day jury trial, Pope was found guilty as charged. The following day the jury reconvened for the penalty phase of trial. After the presentation of evidence, the jury returned a verdict recommending life without parole. At sentencing the trial court found that the State proved beyond a reasonable doubt that Pope intentionally killed the victims while committing a robbery and that he committed a multiple murder. The court further concluded that the aggravating circumstances outweighed the mitigating circumstances and imposed two consecutive life sentences without parole for the murder convictions. The trial court also sentenced Pope to fifty years for the robbery. No sentence was imposed on the felony murder convictions. This direct appeal followed. Additional facts are set forth below where relevant.

### Discussion

#### I.

■ Pope contends the trial court erred in refusing his tendered jury instruction concerning the effect of a prior conviction on witness credibility. The record shows that Pope's accomplice, Aaron Thomas, testified at trial after entering into a plea agreement with the State. Thomas has a lengthy juvenile record including four adjudications for theft, two for receiving stolen property, and one for criminal conversion. He was confronted with his criminal past on cross-examination.[1] At the close of the guilt phase of trial, Pope tendered the following instruction:

> The fact that a witness has previously been convicted of a felony, or a crime involving dishonesty or false statement, is also a factor you may consider in weighing the credibility of that witness. The fact of such a conviction does not necessarily destroy the witness' credibility, but is one of the circumstances you may take into account in determining the weight to be given to his testimony.

R. at 69. The trial court declined to give the instruction. Pope contends it erred in doing so because the instruction represents a correct statement of the law, there was evidence in the record to support giving the instruction, and the substance of the instruction was not covered by other instructions. *See Hartman v. State*, 669 N.E.2d 959, 960–61 (Ind.1996).

■ Pope's argument fails for two reasons. First, contrary to Pope's assertion, the record shows that the substance of witness credibility was covered by other instructions the trial court gave. R. at 1028–30. On this ground alone the trial

---

1. Evidence of juvenile adjudications is generally not admissible.... The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if the conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission of evidence is necessary for a fair determination of the issue of guilt or innocence.
Ind. Evidence Rule 609(d).

court did not err in refusing to give Pope's tendered instruction. Second, "an instruction directed to the testimony of one witness erroneously invades the province of the jury when the instruction intimates an opinion on the credibility of a witness or the weight to be given to his testimony." *Fox v. State*, 497 N.E.2d 221, 225 (Ind. 1986); *see also Webb v. State*, 259 Ind. 101, 105–07, 284 N.E.2d 812, 814–15 (Ind.1972) (finding error, although not fundamental error, in the trial court giving an instruction declaring that the credibility of a witness could be attacked by evidence that the witness had been convicted of a crime where the instruction applied only to one witness); *compare Black v. State*, 153 Ind. App. 309, 287 N.E.2d 354, 358 (1972) (holding that where several witnesses were impeached by evidence of prior convictions there was no error in giving an instruction concerning the effect of prior convictions on the weight to be given to a witness' testimony). In this case Pope's tendered instruction appears to be general in nature applying to all witnesses. However, the record is clear that only one witness was impeached by evidence of his criminal convictions. Because the instruction applied to one witness only, it was improper. For this additional reason the trial court correctly refused to give Pope's tendered instruction.

## II.

■ Pope next contends the trial court erred in not allowing him to "pursue evidence that Aaron Thomas may have possessed bullets which could have been consistent with those used in the murders of the Dergins." Brief of Appellant at 19. This allegation of error is based on the following facts. Pope's mother testified at trial that approximately ten days before the shootings Thomas was a passenger in her car. According to her, as Thomas exited the car she saw bullets rolling around on the front seat and floor in the area where Thomas had been seated. Apparently she retrieved the bullets but later threw them away. Through his mother,

Pope sought to introduce as an exhibit bullets that allegedly looked similar to those she discovered in the car. Over the State's relevancy objection the trial court did not allow the exhibit into evidence and precluded further questioning on the subject. Pope's apparent theory was that the two bullets found at the crime scene matched those in Thomas' possession. Thus, Pope argued before the trial court and again on appeal that he should have been allowed to introduce the exhibit at trial to show it was more likely than not that Thomas fired the fatal shots.

■ Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. We first observe that it would be only marginally relevant in this case if the bullets in Thomas' possession were the same bullets that police recovered from the crime scene. The fact that a person has in his possession the same instrumentality as that used in a crime has only the slightest tendency to support an inference that the person committed the crime. That is especially so where possession of the instrumentality is remote in time from the date the crime occurred. *See, e.g., Short v. State*, 443 N.E.2d 298, 307 (Ind.1982); *Williams v. State*, 714 N.E.2d 671, 673 (Ind.Ct.App. 1999) (both cases declaring that the mere possession of stolen property is less probative of guilt of theft when that possession is not recent in relation to the commission of the theft). In this case we do not view Thomas' possession of the questioned bullets as even marginally relevant. Not only were the bullets admittedly not the same, but also there is no evidence in the record that any witness compared the bullets recovered at the crime scene with Pope's proposed exhibit. In addition, there is no evidence in the record that Pope's mother had any familiarity with firearms in general or bullets in particular. Further, Thomas possessed the bullets over a week be-

fore the Derginses were murdered. There is simply no link between the bullets recovered at the crime scene and the bullets Pope proposed to introduce into evidence. A decision concerning the relevance of proffered evidence is left to the sound discretion of the trial court, and its decision is afforded a great deal of deference on appeal. *Bacher v. State,* 686 N.E.2d 791, 793 (Ind.1997). We will only reverse a trial court upon a showing that the trial court manifestly abused its discretion and the defendant was denied a fair trial. *Henderson v. State,* 455 N.E.2d 1117, 1119 (Ind.1983). There was no abuse of discretion here.

### III.

Pope next contends the trial court erred during the penalty phase of trial by failing to inform the jury that it could exercise what he characterizes as a "mercy option," that is, recommend a term of years even if the State proved beyond a reasonable doubt the statutory elements necessary for imposition of a sentence of life without parole. More specifically, Pope complains that none of the six verdict forms the trial court submitted to the jury contained the "mercy option."

Under Indiana Code § 35–50–2–9 "the jury *may* recommend ... life imprisonment without parole" only if it finds: "(1) the state has proved by a reasonable doubt that at least one (1) of the aggravating circumstances listed in subsection (b) exists; and (2) any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances." Ind. Code § 35–50–2–9(e), (k) (emphasis added). It is thus apparent that the statute does not mandate the jury to recommend life without parole, but only gives it that option.

In this case, the record shows that in both the preliminary and final instructions of the penalty phase of trial the trial court instructed the jury in part as follows:

If the State does prove beyond a reasonable doubt the existence of at least one

aggravating circumstance and you further find that such aggravating circumstance outweighs any mitigating circumstances, you may recommend that the penalty of life imprisonment without parole be imposed or you may recommend that the defendant not be sentenced to life imprisonment without parole and that the defendant be sentenced instead to a fixed term of years of imprisonment and be eligible eventually for parole.

R. at 1045–46, 1076. Although not using the precise term, the trial court in essence instructed the jury that it could exercise the so-called "mercy option" by declining to impose life without parole even if the State carried its statutory burden of proof. The instruction is consistent with Article 1, Section 19 of the Indiana Constitution, which provides that a jury in a criminal case "shall have the right to determine the law and the facts." *See also Bivins v. State,* 642 N.E.2d 928, 946 (Ind.1994) (commenting that because of Art. 1, § 19, a jury in a criminal case is not bound to convict even in the face of proof of guilt beyond a reasonable doubt). Here, Pope does not take issue with the instructions. Nor does he challenge the verdict forms the trial court gave the jury. Rather, his complaint is that the jury was never able to exercise the option to grant him mercy because none of the verdict forms provided the appropriate language.

Each verdict form began, "We, the jury, find" followed by an outline of the State's statutory burden of proof regarding aggravating and mitigating circumstances. R. at 144–46. Where the jury found that the statutory burden was met, the verdict form provided "we, the Jury, therefore recommend that the defendant be sentenced by the Court to Life Imprisonment Without Parole." R. at 144. Where the jury found that the statutory burden was not met, the verdict form provided "we, the Jury, therefore recommend that the defendant be sentenced by the Court to a Term of Years." R. at 145–46.

It is true the trial court did not give the jury a verdict form specifically advising that it could recommend the defendant be sentenced to a term of years even if the State carried its burden of proof. Had the defendant requested such a verdict form, the trial court would have erred in failing to give it.[2] *See Seay v. State,* 698 N.E.2d 732, 734 (Ind.1998) (finding error in refusing to give a verdict form permitting the jury to render a verdict that the defendant was not a habitual offender even if it found that the State proved beyond a reasonable doubt that the defendant had accumulated two prior unrelated felonies), *adopting Duff v. State,* 508 N.E.2d 17, 23 (Ind.1987) (separate opinion of Dickson, J.). However, the record shows that Pope did not object at trial to the verdict forms given by the trial court nor did he submit forms of his own.[3] We have held " 'when the jury was permitted to retire without sufficient forms of verdict, the number of forms submitted cannot be considered as reversible error where the record does not show that the accused tendered or requested any other forms.' " *Schiro v. State,* 451 N.E.2d 1047, 1062 (Ind.1983) (quoting *Kirkland v. State,* 235 Ind. 450, 134 N.E.2d 223 (1956)). Thus, Pope has waived this claim of error unless fundamental error occurred. *Sanchez v. State,* 675 N.E.2d 306, 308 (Ind. 1996). Fundamental error is error that represents a blatant violation of basic principles rendering the trial unfair to the

defendant and thereby depriving the defendant of fundamental due process. *Borders v. State,* 688 N.E.2d 874, 882 (Ind. 1997). The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* In determining whether a claimed error denies the defendant a fair trial, we consider whether the resulting harm or potential for harm is substantial. *Townsend v. State,* 632 N.E.2d 727, 730 (Ind.1994). The element of harm is not shown by the fact that a defendant was ultimately convicted. *Id.* Rather, it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Id.*

We conclude that Pope was not denied his right to a fair trial. If the jury were inclined to recommend against life without parole, then it could have simply found either (a) the State failed to prove beyond a reasonable doubt the existence of one or more aggravating circumstances, or (b) the State did prove the existence of one or more aggravating circumstances, but they did not outweigh the mitigating circumstances. And, the jury could have done so even in the face of proof beyond a reasonable doubt to the contrary. *See Bivins,* 642 N.E.2d at 946. Although told in the instructions that it could exercise "mercy" on Pope's behalf, the jury obviously declined to do so when it recommended life

---

**2.** This is so only because in this instance the trial court submitted special verdict forms to the jury. We have rejected the requirement of written findings for juries in capital cases. *Wrinkles v. State,* 690 N.E.2d 1156, 1168 (Ind. 1997); *Harrison v. State,* 644 N.E.2d 1243, 1259 n. 28 (Ind.1995). The same is true in life without parole cases. See *Ajabu v. State,* 693 N.E.2d 921, 936 (Ind.1998) (finding a sentence of life without parole is subject to the same statutory standards and requirements as the death penalty). Thus, a proper verdict form would require the jury to recommend either a sentence of life without parole or a term of years.

**3.** The record shows the following exchange:

Court: Counsel has both received the Court's final instruction and sample verdict forms?
[Defense Counsel]: Yes Your Honor.
[Prosecutor]: Yes Judge.
Court: And for the record, I believe yesterday ... last evening in chambers, we discussed the verdict forms and the Court's final instructions and made some changes to the Court's Final instructions which I have provided to counsel this morning. Are they [sic] changes reflective of our discussions in chambers yesterday gentlemen?
[Prosecutor]: Yes
[Defense Counsel]: Yes Your Honor and that did away with necessity for the defendant to tender instructions along those lines.
R. at 1041.

without parole. No fundamental error occurred on this issue.

## IV.

■ The State alleged the existence of two aggravating circumstances: multiple murder under Indiana Code § 35–50–2–9(b)(8)[4] and felony murder under Indiana Code § 35–50–2– 9(b)(1)(G). At the penalty phase of trial the trial court read the following as a preliminary as well as a final instruction:

> On or about the 29th day of August, 1997, in the County of Allen in the State of Indiana, said defendant, Bryce D. Pope, did:
>
> (1) intentionally kill another human being, to wit: Richard Dergins, while committing or attempting to commit Robbery, to wit: by discharging a firearm at and against the head of Richard Dergins, resulting in the death of Richard Dergins, *and/or* the defendant committed another Murder, to wit: killing Sara Dergins, being contrary to the form of the statute in such a case made and provided: and,
>
> (2) intentionally kill another human being, to wit: Sara Dergins, while committing or attempting to commit Robbery, to wit: by discharging a firearm at and against the head of Sara Dergins, resulting in the death of Sara Dergins, *and/or* the defendant committed another Murder, to wit: killing Richard Dergins, being contrary to the form of the statute in such case made and provided.

R. at 125, 135 (emphasis added). According to Pope, because the aggravating circumstances are worded conjunctively as well as alternatively, it is impossible to know whether the jury unanimously found any charged aggravating circumstance proven beyond a reasonable doubt. Pope explains: "it therefore becomes apparent

that one or more members of the jury could have found the first aggravator proven, but not the second, while others could have found the second proven, but not the first." Brief of Appellant at 33. At trial, Pope did not object to the instructions. In this appeal, he seeks to avoid waiver by claiming fundamental error.

Before a jury may recommend life without parole it must unanimously find beyond a reasonable doubt the existence of "at least one (1) of the aggravating circumstances listed in subsection (b)...." Ind. Code § 35–50–2–9(k)(1); *Bivins,* 642 N.E.2d at 947 (discussing the jury's obligation under the death penalty statute). Here the use of "and/or" appears to have given the jury the option to recommend life without parole where less than all members of the jury found any single charged aggravator to have been proven beyond a reasonable doubt. Such an option is contrary to the mandate of the statute.

Nonetheless, even if the trial court erred in giving the instruction, the error was not fundamental. This is so because the jury indicated by its guilt phase verdict that it found at least one of the charged aggravators to have been proven beyond a reasonable doubt: that Pope committed multiple murder. In the guilt phase of trial, the jury unanimously found Pope guilty beyond a reasonable doubt of the murders of Richard Dergins and Sara Dergins. Thus the jury unanimously found beyond a reasonable doubt the existence of a charged statutory aggravating circumstance, meeting the mandate of Ind.Code § 35–50–2–9(k)(1). We conclude therefore that the claimed error here does not represent a blatant violation of basic principles rendering the trial unfair or depriving Pope of fundamental due process.

---

4. Subsection (b)(8) specifically provides "[t]he defendant has committed another murder, at any time, regardless of whether the defendant has been convicted of that murder." This subsection is considered in cases involving double or multiple murders for which the defendant is being tried in one proceeding. *Hough v. State,* 560 N.E.2d 511, 519 (Ind. 1990).

## V.

■ The (b)(1) aggravating factor requires proof beyond a reasonable doubt that a defendant "committed the murder by intentionally killing the victim[s] while committing or attempting to commit" robbery. Ind.Code § 35–50–2–9(b)(1)(G). Pope asserts that during the penalty phase of trial, "the jury was never required to, nor given an opportunity to, determine whether an intentional murder occurred." Brief of Appellant at 36. Pope is mistaken. The record shows that in both its preliminary and final instructions the trial court advised the jury, among other things, as follows:

> In the second or penalty phase of this trial, the State has filed an Application for life imprisonment without parole by alleging the existence of at least one aggravating circumstance as follows. On or about the twenty-ninth day of August, nineteen ninety-seven in the County of Allen and the State of Indiana, said defendant, Bryce D. Pope, did one: *intentionally kill* another human being, to wit: Richard Dergins while committing or attempting to commit robbery. . . . The law provides for the penalty of life imprisonment without parole upon conviction for the crime of murder under the following circumstances. The defendant committed the murder by *intentionally killing* the victim while committing or attempting to commit the crime of robbery and/or the defendant committed another murder. *The State must prove to you beyond a reasonable doubt each and every material element of the aggravating circumstances alleged and further prove to you that any mitigating circumstances are outweighed by aggravating circumstances.*

R. at 1042–44; 1073–74 (emphasis added).[5] The jury was properly instructed. We find no error on this issue.

**5.** An identical instruction was given concern-

## VI.

■ For his last allegation Pope contends the trial court erred in imposing sentences of life imprisonment without parole because it considered non-statutory aggravating circumstances. A sentence of life without parole is subject to the same statutory standards and requirements as the death penalty. *Ajabu v. State,* 693 N.E.2d 921, 936 (Ind.1998). In this case the State's request for life without parole was based upon two statutory aggravators: an intentional killing during the commission of a robbery and multiple murder. *See* Ind.Code § 35–50–2–9(b)(1)(G), (b)(8). Following deliberations after the penalty phase of trial the jury recommended that life without parole be imposed. After a subsequent sentencing hearing, the trial court entered judgment and sentences on the convictions, ordered life without parole be imposed, and issued the requisite sentencing statement.

In its written sentencing order the trial court found that the State had proven beyond a reasonable doubt the existence of two statutory aggravating circumstances: (1) Pope committed the murders by intentionally killing the victims while committing or attempting to commit robbery, Ind. Code § 35–50–2–9(b)(1)(G); and (2) Pope committed another murder at any time, Ind.Code § 35–50–2–9(b)(8). The trial court's reference to these life without parole aggravating factors was correct. However, the trial court also noted the following aggravating factors: Richard Dergins was over the age of sixty-five, and the nature and the circumstances of the crime, namely: the victims welcomed the defendant into their home numerous times and trusted him, the defendant planned to kill the victims after robbing them even before he approached the front door, Sara Dergins suffered agony not only from the death of her husband who was shot first but from the agony of impending fate at the defendant's hand as she lay prone on the floor, and the profane treatment of the

ing Sara Dergins. R. at 1043, 1073–74.

victims prior to their deaths. R. at 158. The trial court then recited a number of mitigating circumstances including Pope's youth, he had been raised in a strict religious environment, was gainfully employed from age fifteen until the time of his arrest, had never been adjudicated a delinquent as a juvenile, and had only a minor criminal history—a misdemeanor conviction for a minor consuming alcohol and possession of marijuana. R. at 157–58. Finding that the aggravating circumstances outweighed the mitigating circumstances, the trial court sentenced Pope to life in prison without parole for both murder convictions. The trial court also imposed a sentence of fifty years for the robbery conviction. The trial court did not impose sentence on the two felony murder convictions. In weighing the aggravating and mitigating circumstances, the trial court did not separate its findings concerning the life without parole sentence from those relating to the robbery sentence.

 The enumerated aggravating factors set forth in the general felony sentencing statute "do not limit the matters that the trial court may consider in determining sentence." Ind.Code § 35–38–1–7.1(d). However, we have held "when the death sentence is sought, courts must ... limit the aggravating circumstances eligible for consideration to those specified in the death penalty statute, Indiana Code Section 35–50–2–9(b)." *Bivins,* 642 N.E.2d at 955. The same is true for a sentence of life without parole. In this case it is not altogether clear whether the trial court relied on non-capital aggravators when imposing sentences for life without parole. This matter needs clarification. Accordingly, we must remand for a new sentencing order.

### Conclusion

We affirm Pope's convictions for two counts of murder and one count of robbery. We vacate Pope's convictions for two counts of felony murder. This case is remanded for a new sentencing order consistent with this opinion.

SHEPARD, C.J., and SULLIVAN and BOEHM, JJ., concur.

DICKSON, J., concurs in result.