**Terry C. BROWN, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 34S00–0112–CR–621.**

Supreme Court of Indiana.

Feb. 28, 2003.

Matthew J. Elkin, Deputy Public Defender, Kokomo, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott A. Kreider, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Terry Brown appeals his convictions for two murders and concurrent sentences of life without parole. We affirm the convictions but, finding the sentencing order to be inadequate, impose instead a sentence totaling 110 years.

*Background*

At approximately 2:20 p.m. on July 16, 2000, Kokomo police officers Michael Banush and Greg Baldini were on bike patrol when they heard a gunshot. As they approached the scene, the officers saw Defendant run into a barbershop at 901 East North Street, exit the barbershop, and hurriedly leave the scene. Defendant was carrying what appeared to be a white document and another object. No other person was seen entering or exiting the barbershop.

The officers found Charles Young, Jr. laying on the sidewalk with a bullet hole in

the left side of his neck. Officer Baldini stayed at the scene, while Officer Banush rode northbound after Defendant. Officer Baldini heard noises inside the barbershop. He and Officer Brannon Carpenter entered the building and located Robert Hunter, who was bleeding from an apparent gunshot wound to the head.

Meanwhile, Officer Banush apprehended Defendant. After handcuffing Defendant, Officer Banush found a black leather glove on the ground and a matching glove on Defendant. In addition, Defendant had blood on his clothing, which later proved to match that of Young. Officer Banush did not see the object that he had observed Defendant carrying from the barbershop. However, a search of the area near the barbershop revealed a bag with two guns, a gun sight, and a white piece of paper. The document appeared to have blood on it. One of the guns, a .38 caliber revolver, had six empty shell casings in it. The other gun, a 9mm semiautomatic, was loaded and had one round in the chamber and one round missing. Bullet fragments were removed from the bodies of both Young and Hunter. In addition, the officers recovered bullets and a 9mm shell casing at the scene.

■ Defendant was charged with two counts of Murder. The State also filed one count seeking life imprisonment without parole for Young's murder. As the aggravating circumstance justifying life imprisonment without parole, the State charged Hunter's murder.[1]

At trial, evidence was presented that: (1) the bullets and fragments were consistent with the .38 caliber revolver, and that the 9mm shell casing was fired from the 9mm handgun; (2) Defendant was identified as the person seen leaving the barbershop; (3) Defendant was seen shooting Young in front of the barbershop; and (4) the cause of death established for both Young and Hunter was gunshot wounds.

A jury convicted Defendant of both counts of Murder. During the sentencing phase, the jury recommended a sentence of life imprisonment without parole. The trial court sentenced Defendant to two concurrent terms of life imprisonment without parole. The original sentencing order read:

> Arguments on Motion of Elkin's, as to Count III to overturn and dismiss, is denied. State presents evidence before sentencing. Defendant makes unsworn statement. The jury having found you Guilty in Count I of Murder, the Court accepts their recommendation and sentences you to Life Imprisonment Without Parole. As to Count II, the jury having found you Guilty of Murder, the court accepts their recommendation and you are sentenced to Life Imprisonment Without Parole. Aggravating circumstances are stated on the record. Sentences are to run concurrent.

(App. at 8). The trial court had made the following oral statements at the conclusion of the sentencing hearing:

> The jury having found you guilty in Count I of Murder of Charles Young, Jr., the court accepts the recommendation of the jury and sentences you to life imprisonment without parole, the aggravating factors being for both counts the same. I will state them after I sentence

---

1. "The defendant has committed another murder, at any time, regardless of whether the defendant has been convicted of that murder." Ind.Code § 35–50–2–9(b)(8) (1998). This subsection is only available in cases involving double or multiple murders for which the defendant is being tried in one proceeding. *Corcoran v. State*, 739 N.E.2d 649, 656 n. 5 (Ind.2000); *Williams v. State*, 669 N.E.2d 1372, 1389 (Ind.1996), *cert. denied*, 520 U.S. 1232, 117 S.Ct. 1828, 137 L.Ed.2d 1034 (1997).

you for Count II. In Count II the jury having found you guilty of the offense of Murder of Robert Hunter, the court will accept the recommendation of the jury and sentence you to life imprisonment without parole. Those sentences will be concurrent. The court figures, the court states as aggravating circumstances multiple murders, your long and extensive criminal record, the fact that you were on bond at the time of this offense from Marion County which you have since been convicted of. Further, the court can draw inferences from circumstances and circumstantial evidence in this cause in that Robert Hunter was killed by a shot to the head. Therefore, the court concludes as an aggravating factor that that was an execution. Judgment on said findings. Commitment is ordered.

(Tr. at 415.)

On appeal of Defendant's first sentence, we found several errors in the sentencing order and remanded by order for resentencing. We noted that the sentencing order failed to satisfy the heightened sentencing standards for life imprisonment without parole as set out in *Harrison v. State*, 644 N.E.2d 1243, 1262 (Ind.1995), *after remand*, 659 N.E.2d 480 (Ind.1995), *reh'g denied, cert. denied*, 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996). In addition, we found that the trial judge improperly stated and considered aggravating circumstances contained in the general felony statute, Ind.Code § 35–38–1–7.1, rather than properly limiting its consideration to only those factors listed in Ind. Code § 35–50–2–9(b). *See Pope v. State*, 737 N.E.2d 374, 382–83 (Ind.2000); *Bivins v. State*, 642 N.E.2d 928, 953–57 (Ind. 1994), *cert. denied*, 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996).

On remand, the trial court again sentenced Defendant to two concurrent life-without-parole terms, with the following sentencing order:

The Jury having found the Defendant, Terry Brown, Guilty of the offense of Murder of Charles Young, Jr. in Count I, and further, the defendant having been found Guilty in Count II of the Murder of Robert Hunter, IT IS THE SENTENCE OF THIS COURT, that the Defendant is sentenced to Life Imprisonment Without Parole, as to each count, and said counts are to be served concurrently.

The Court states as the aggravating circumstance as to each count being the Defendant has been convicted of another murder. The Court finds no mitigating circumstances. COMMITMENT IS ORDERED.

(Supp.App. at 93.)

*Discussion*

I

■ Defendant argues that the trial court abused its discretion when it permitted Dr. Michael Clark to testify to Robert Hunter's cause of death because his testimony was based on hearsay, rather than personal observation.

■ The failure to make a contemporaneous objection to the admission of evidence at trial, so as to provide the trial court an opportunity to make a final ruling on the matter in the context in which the evidence is introduced, results in waiver of the error on appeal. *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind.2000); *Harrison*, 644 N.E.2d at 1256. In the present case, Defendant failed to make a contemporaneous objection to the admission of Dr. Clark's opinion as to Hunter's cause of death. The trial transcript reveals that Defendant did not object when Dr. Clark testified to the cause of death of either Young or Hunter. Rather, Defendant's objection followed a question regarding a

wound to Hunter's right index finger. Defendant's failure to object contemporaneously results in waiver of the right to appellate review.

## II

██ Defendant contends that he was sentenced in violation of recent United States Supreme Court decisions in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Ring*, the United States Supreme Court overruled *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), to the extent it allowed the judge, not the jury, to find an aggravating circumstance that supported a death sentence, and decided that *Apprendi* applied to Arizona's death penalty scheme. *Ring*, 122 S.Ct. at 2443. *Apprendi* had announced the rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362–63. Specifically, Defendant contends that the sentence is invalid because there was no specific jury verdict finding that the aggravating circumstance had been proven beyond a reasonable doubt and that the jury was incorrectly instructed that its role was only advisory.

In *Bostick v. State*, 773 N.E.2d 266, 273–74 (Ind.2002), *reh'g denied*, we held that defendant's life-without-parole sentence had been imposed in violation of the requirements of *Ring* and *Apprendi* and remand for resentencing. However, we find no violation of *Ring* or *Apprendi* in this case. In *Bostick*, the jury failed to make any recommendation as to sentence. In contrast, in this case, the jury unanimously recommended that Defendant be sentenced to life without parole. We hold that, implicit in the jury's recommendation as to sentence is the jury's finding beyond a reasonable doubt that the charged aggravating circumstance exists. We so hold because the jury was instructed that before it could recommend that a death sentence be imposed, the jury must find the existence of the charged aggravating circumstance beyond a reasonable doubt and that the aggravating circumstance outweighed the mitigating circumstances. Therefore, the jury necessarily determined the fact of the aggravating circumstance beyond a reasonable doubt. *Overstreet v. State*, 783 N.E.2d 1140, 1160–61 (Ind. 2003); *Wrinkles v. State*, 776 N.E.2d 905, 907–08 (Ind.2002). Furthermore, the aggravating circumstance that made Defendant eligible for a sentence of life without parole was that he had committed multiple murders. See Ind.Code § 35–50–2–9(b)(8). The jury's verdict in the guilt phase, finding Defendant guilty of the two murders, necessarily means that the jury found, beyond a reasonable doubt, that Defendant had committed more than one murder. *Wrinkles*, 776 N.E.2d at 907–08.

## III

██ Finding no *Ring* or *Apprendi* violation, we turn to the question of whether Defendant's life-without-parole sentences are appropriate. The Indiana Constitution provides that "[t]he Supreme Court shall have, in all appeals of criminal cases, the power to review and revise the sentence imposed." Ind. Const. art. VII, § 4. Although our rules for appellate review of sentences require that deference be given to the judgment of the trial court in capital cases, those rules "stand more as guideposts for our appellate review than as immovable pillars supporting a sentence decision." *Spranger v. State*, 498 N.E.2d 931,

947 n. 2 (Ind.1986), *reh'g denied, cert. denied,* 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536 (1987). Moreover, "this Court's review of capital cases under Article 7 is part and parcel of the sentencing process." *Cooper v. State,* 540 N.E.2d 1216, 1218 (Ind.1989). This special review of capital cases is grounded in the Indiana Constitution, our state's death penalty statute, and federal death penalty jurisprudence. *Harrison,* 644 N.E.2d at 1260.

Taken together, neither the revised written sentencing order nor the verbal statements made at the sentencing hearing satisfy the legal requirements needed to impose a life-without-parole sentence.

■ When imposing a sentence of life without parole, the same heightened standards used in death penalty cases apply. *Holsinger v. State,* 750 N.E.2d 354, 362 (Ind.2001); *Pope v. State,* 737 N.E.2d 374, 382 (Ind.2000), *reh'g denied; Nicholson v. State,* 734 N.E.2d 1047, 1048 (Ind.2000), *reh'g denied; Rawley v. State,* 724 N.E.2d 1087, 1091 (Ind.2000); *Ajabu v. State,* 693 N.E.2d 921, 936 (Ind.1998) ("The statute provides that life without parole is imposed under the same standards and is subject to the same requirements."), *after remand,* 722 N.E.2d 339 (2000); *see also* Ind.Code § 35–50–2–9. Because a sentence of life in prison without parole is imposed under the same standards as the death penalty, we require the same specificity from a trial court sentencing a defendant to life in prison without parole as we would a court sentencing a person to death. *Pope,* 737 N.E.2d at 382; *Nicholson,* 734 N.E.2d at 1048; *Rawley,* 724 N.E.2d at 1091; *Ajabu,* 693 N.E.2d at 936. Neither *Ring* and *Apprendi* nor recent statutory changes [2] lessen these requirements.

Our death penalty statute guides our review by providing standards for governing the trial court's imposition of life imprisonment sentences. Following the completion of the guilt-determination phase of the trial and the rendering of the jury's verdict, the trial court reconvenes for the penalty phase. Before life imprisonment can be imposed, our statute requires the State to prove beyond a reasonable doubt at least one aggravating circumstance listed in subsections (b)(1) through (b)(16) of the statute. *See* Ind.Code § 35–50–2–9 (1998); *see also Bivins,* 642 N.E.2d at 955–56. As discussed at several points in this opinion, the State supported its request for life imprisonment with one alleged aggravating circumstance: Defendant committed multiple murders. *See* Ind.Code § 35–50–2–9(b)(8) (1998).

After deliberations, the jury in the present case recommended life imprisonment without parole.

Once the jury has made its recommendation, the jury is dismissed, and the trial court has the duty of making the final sentencing determination at the sentencing hearing.

Applicable law imposes several requirements on the trial court in making its sentencing determination. First, the trial court must find that the State has proven beyond a reasonable doubt that at least one of the aggravating circumstances listed in the death penalty statute exists. *See* Ind.Code § 35–50–2–9(k)(1) (1998). Second, the trial court must find that any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances. *See id.* § 35–50–2–9(k)(2). Third, before making the final determination of the sentence, the trial court must consider the jury's recommendation. *See id.* § 35–50–2–9(e). The trial

---

**2.** "If the jury reaches a sentencing recommendation, the court shall sentence the defendant accordingly." Pub.L. No. 117–2002, § 2; Ind.Code § 35–50–2–9(e) (2002).

court must make a record of its reasons for selecting the sentence that it imposes. *See id.* § 35–38–1–3.

■ The above statutory provisions make clear that the sentencing court has a separate and independent role in assessing and weighing the aggravating and mitigating circumstances and in making the final determination whether to impose a particular sentence. *Harrison v. State,* 644 N.E.2d at 1261 (citing *Benirschke v. State,* 577 N.E.2d 576, 579 (Ind.1991), *reh'g denied* 582 N.E.2d 355 (Ind.1991), *cert. denied,* 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992)). In arriving at its own separate determination as to whether life without parole is an appropriate sentence, the sentencing court is to point out its employment of the process in specific and clear findings. *Id.* at 1261–62, 112 S.Ct. 3042.

■ In *Harrison,* we established the following steps:

> The trial court's statement of reasons (i) must identify each mitigating and aggravating circumstance found, (ii) must include the specific facts and reasons which lead the court to find the existence of each such circumstance, (iii) must articulate that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence, and (iv) must set forth the trial court's personal conclusion that

the sentence is appropriate punishment for this offender and this crime.

*Id.* at 1262 (citations omitted). We require such specificity in capital and life-without-parole sentencing orders to insure the trial court considered only proper matter when imposing a life sentence, thus safeguarding against sentences that are arbitrary or capricious, and so as to enable appellate courts to determine the reasonableness of the sentence imposed. *Id.*

■ We find that the amended sentencing order, as outlined above, does not comply with these requirements in the following respects. First, the order does not clearly establish that the trial court found that the State proved the existence of at least one aggravating circumstance beyond a reasonable doubt. Second, the order does not set forth sufficient facts and reasons that lead the court to find the particular aggravating and mitigating circumstances. Third, there is nothing in the revised sentencing order that indicates that the trial court considered the jury's recommendation, or even what that recommendation was.[3] Fourth, the order does not contain the necessary personal conclusion of the trial court that life without parole is the appropriate punishment for this offender and this crime; rather, the order merely indicates the presence of an aggravating circumstance while finding "no mitigating circumstances."[4] In addi-

---

**3.** We acknowledge that the initial (*i.e.,* before remand) sentencing order and judge's oral statement at sentencing set forth the jury's recommendation.

**4.** Under Indiana law, the requirements set out in *Harrison* must appear in the trial court's written sentencing order. While we normally would look only to the written document when reviewing a trial court's sentence, in this case we have also reviewed the trial court's oral statements for compliance with the *Harrison* requirements. In it, the trial court listed non-statutory aggravating circum-

stances including defendant's "long and extensive criminal record," "the fact that [Defendant] w[as] on bond at the time of this offense from Marion County which you have since been convicted of," and that one of the murders was "an execution." (Tr. at 415.) A trial court may not consider non-statutory aggravating circumstances or uncharged statutory circumstances when imposing life in prison without parole. *See Holsinger,* 750 N.E.2d at 361–62. It appears that this error was corrected by the revised sentencing order.

tion, the trial court erroneously imposed two life-without-parole sentences, though the State had only charged one such count for sentence enhancement.

Without a trial court sentencing order that meets the requirements of the law, we are unwilling to affirm its sentence of life without parole. Our options are: (1) remand the matter to the trial court for clarification or a new sentencing determination; (2) affirm the sentence if the error is harmless; or (3) independently reweigh the proper aggravating and mitigating circumstances. *Bivins,* 642 N.E.2d at 957. Since we have already remanded for a revised sentencing order once, we elect to make an independent evaluation of the aggravating and mitigating circumstances.

In the absence of a trial court sentencing order meeting the requirements of *Harrison* in general and failing to articulate any evaluation and balancing of aggravating and mitigating circumstances, we vacate Defendant's life-without-parole sentences and impose instead a term of years for Defendant's Murder convictions.

The presumptive sentence for Murder is fifty-five years, with a possible enhancement of up to ten years. Ind.Code § 35–50–2–3(a) (1998).

Unlike sentencing under the death penalty and life-without-parole statute, the trial court is not limited to considering aggravating circumstances specified in the statute when imposing a term-of-years sentence. As such, we here consider the additional aggravating circumstances identified by the trial court in its oral statements at the time of sentencing, which are outlined above in the *Background* section. These include: commission of multiple murders; Defendant's extensive criminal

record; that Defendant was on bond from Marion County at the time of the offenses outlined in this case and has since been convicted of the Marion County offense; and the execution-style nature of Robert Hunter's gunshot wound to the head.

The trial court found no mitigating circumstances. We accept the trial court's findings regarding the lack of mitigating circumstances.[5]

We conclude that two sentences of fifty-five year terms are warranted. In addition, we find that the severity of the aggravating circumstances, combined with the absence of mitigating factors, warrant the two terms being served consecutively. *See* Ind.Code § 35–38–1–7.1(b).

Given these findings, Defendant's sentence for two terms of life imprisonment without parole is hereby vacated and replaced with two consecutive 55–year sentences.

### Conclusion

We affirm Defendant's convictions. We vacate the sentence imposed by the trial court and remand with instructions to impose consecutive sentences of 55 years on each of Counts I and II.

SHEPARD, C.J., and DICKSON and RUCKER, JJ., concur. BOEHM, J., would remand for a revised sentencing order where, as here, the errors in sentencing are procedural and do not necessarily preclude the appropriateness of a single sentence of life without parole as charged.

---

**5.** In addition, Defendant does not assert that the trial court overlooked any mitigating fac-

tors.