## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2020, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Caroline B. Briggs
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Quinton Devon Newsom,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 31, 2020

Court of Appeals Case No.
20A-CR-414

Appeal from the Tippecanoe
Superior Court

The Honorable Kristen E. McVey,
Judge

Trial Court Cause No.
79D05-1903-F6-297

**Bailey, Judge.**

# Case Summary

[1] Quinton Newsom ("Newsom") challenges his conviction of Intimidation, as a Level 6 felony,[1] following a jury trial.

[2] We affirm.

# Issues

[3] Newsom presents the following two restated issues on appeal:

    I.     Whether the State presented sufficient evidence to support his conviction of Intimidation.

    II.    Whether the trial court committed fundamental error in its jury instructions.

# Facts and Procedural History

[4] The following are the facts most favorable to the verdict.[2] Newsom and Shanna Haley ("Haley") had been in a romantic relationship for about a year, and Haley ended it at some point in April 2019. Newsom and Haley have a child who was born on February 10, 2019, and who resided with Haley. On March 7, 2019, Newsom came to Haley's residence and Haley let him inside.

---

[1] Ind. Code § 35-45-2-1(a)(2), (b)(1)(A).

[2] Our standard of review, as discussed in more detail below, requires that we consider only the probative evidence supporting the verdict. *See, e.g.*, *Merriweather v. State*, 128 N.E.3d 503, 514-15 (Ind. Ct. App. 2019), *trans. denied*.

Newsom had another child with him who Haley did not know but who she believed to be about nine or ten years old.

[5] Immediately after walking through the door, Newsom put two fingers up to Haley's head and said, "[B]itch, you['re] dead[,] I'm going to kill you." Tr. at 24. Haley did not know why Newsom said he would kill her. In response, Haley told Newsom he "need[ed] to stop" or she was going to call the police, but she did not call the police at that time. *Id.* at 25. Newsom repeated the same action and statement several times.

[6] Newsom told Haley that he wanted to hold the baby, so Haley let him do so while she sat next to him at the kitchen table. At some point, while he was still holding the baby, Newsom "got[] mad" and took the baby into the bedroom. *Id.* Newsom shut the bedroom door and would not let Haley into the room. Because she was concerned for the baby, Haley begged Newsom to let her in. Newsom opened the bedroom door, pushed Haley with him into the bathroom, and shut the bathroom door. While they were both in the bathroom, Newsom was alternately "screaming and yelling" at Haley and telling her he loved her and wanted her back. *Id.* at 26-27. Haley asked Newsom to let her out of the bathroom several times.

[7] Haley was eventually able to exit the bathroom, and both she and Newsom entered Haley's bedroom. While Haley grabbed the baby, she watched Newsom lie on her bed and cover up with the blanket. Newsom was either sleeping or just had his eyes closed. Haley tried to wake him up several times,

and in response Newsom either screamed at Haley, told her to leave him alone, or ignored her. At one point when Haley was trying to wake Newsom, he "threw the blanket up and, as he did, he smacked [the baby] in the face." *Id*. at 27-28.

[8] Haley placed the baby in a play pen near the bed. Newsom shoved Haley down onto the bed by her shoulders and put one hand on her neck and the other on her head. Newsom held Haley in this position for a few minutes and alternated between squeezing his hands and telling Haley, "I'm going to kill you," and kissing Haley and telling her he loved her and wanted her back. *Id*. at 29. Haley was able to push Newsom away using her feet. Newsom then shut the curtains in the bedroom and told Haley he was "going to make this battery charge count." *Id*. at 30.

[9] Newsom pushed Haley back onto the bed and again placed his hands on her neck and head. Newsom demanded Haley's phone, which she hid behind her back. Haley then used her phone to call 9-1-1 by pushing the lock button repeatedly. A fight over Haley's phone ensued, and both Haley's and Newsom's phones ended up on the floor across the room. Newsom asked Haley if she had really called the police and, when Haley affirmed that she did, Newsom walked to the front door, put a coat on the child who had arrived with him, and started to walk out the door. Newsom once again put his fingers up to Haley's head and said, "[B]itch[,] you're dead." *Id*. at 32. Once Newsom was outside, he again asked Haley if she had really called the police. After Haley answered in the affirmative, Newsom "slammed the front door back open[,] …

chased [Haley] into [the] bedroom[,]" and told her he was going to kill her. *Id.* at 32–33. Newsom then left. Haley locked the front door, called her next-door neighbor, and called 9-1-1 again.

[10] Officer Lonnie Wilson ("Officer Wilson") arrived at Haley's residence and made contact with Haley while other officers made contact with Newsom a few blocks away from Haley's apartment. Officer Wilson noticed that Haley was nervous, distraught, "worked up," and that she had been crying. *Id.* at 53. Officer Wilson noticed that Haley showed restraint and apprehensiveness about speaking to him about what had happened, and Haley repeatedly told Officer Wilson that she was afraid.

[11] On March 8, 2019, the State charged Newsom with Count I, Intimidation, as a Level 6 felony, and Count II, Domestic Battery, as a Level 6 felony.[3] The information filed regarding the Intimidation charge stated:

> On or about March 7, 2019, in Tippecanoe County, State of Indiana, Quinton Devon Newsom did communicate a threat to commit a forcible felony, to-wit: murder, to Shanna Haley, with the intent that Shanna Haley be placed in fear of retaliation for a prior lawful act, to-wit: calling 911[.]

App. at 21.[4]

---

[3] I.C. § 35-42-2-1.3(a), (b)(2).

[4] As Newsom points out, the Information for the Intimidation charge laid out the elements of Indiana Code Section 35-45-2-1(a)(2) (i.e., a threat with intent that the other person be placed in fear of retaliation for a prior lawful act), but mistakenly **cited** Indiana Code Section 35-45-2-1(a)(**1**) (i.e., a threat with intent that the

Newsom had a jury trial on September 12, 2019, after which the jury received the following relevant instructions:

> **Instruction 13.01**       **Instructions to Be Considered as a Whole**
>
> You are to consider all of the instructions, both preliminary and final, together.  Do not single out any certain sentence or any individual point or instruction and ignore the others.
>
>                       * * *
>
> **Instruction 13.05**       **Issues for Trial**
>
> The State of Indiana has charged the Defendant, Quinton Devon Newsom, as follows:
>
> Count 1, **Intimidation**, reads:
>
> On or about March 7, 2019, in Tippecanoe County, State of Indiana, Quinton Devon Newsom did communicate a threat to commit a forcible felony, to-wit:  murder, to Shanna Haley, with the intent that Shanna Haley be placed in fear of retaliation for a prior lawful act, to-wit: calling 911.

---

other person engage in conduct against the other person's will).  However, Newsom did not file a motion to dismiss or otherwise object to the citation in the charging information, nor does he allege on appeal that the mistaken citation in the information was fundamental error.  Moreover, we note that both the charging information and the jury's instructions stated the correct elements of Intimidation under the correct code section, i.e., I.C. § 35-45-2-1(a)(**2**).  *See Funk v. State*, 714 N.E.2d 746, 749 (Ind. Ct. App. 1999) (finding no fundamental error where the "label applied to the charges may have been facially incorrect, but the substance of the intimidation charges was proper"), *trans. denied*.

* * *

**Instruction 6.0200**  **Intimidation**

The crime of Intimidation is defined by law as follows:

A person whom [sic] communicates a threat to commit a forcible felony to another person with the intent that the other person be placed in fear of retaliation for a prior lawful act commits Intimidation, a Level 6 felony.

Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:

1. The Defendant;

2. communicated a threat to Shanna Haley[;]

3. with the intent that Shanna Haley be placed in fear of retaliation for a prior lawful act[;]

4. the threat was to commit a forcible felony.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Intimidation a Level 6 Felony, charged in Count 1.

* * *

**Instruction 14.4120**  **Threat**

The term "threat" is defined by law as meaning an expression, by words or action, of the intention to:

1. [u]nlawfully injure the person threatened or another person, or damage property;

2. unlawfully subject a person to physical confinement or restraint;

3. commit a crime;

4. unlawfully withhold official action, or cause such withholding;

5. unlawfully withhold testimony or information with respect to another person's legal claim or defense, except for a reasonable claim for witness fees and expenses;

6. expose the person threatened to hatred, contempt, disgrace, or ridicule;

7. falsely harm the credit or business reputation of the person threatened, [sic] or

8. cause the evacuation of a dwelling, a building, another structure or vehicle.

**Instruction 14.1780**          **Forcible Felony**

The term "forcible felony" is defined by law as meaning a felony that involves the use or threat of force against a human being, or in which there is an imminent danger of bodily injury to a human being.

**Instruction 13.27**         **Jury Deliberations**

To return a verdict, each of you must agree to it.

***

The Court is submitting to you forms of possible verdicts you may return.… Do not sign any verdict form for which there is not unanimous agreement.…

App. at 36-38, 42-43.

[13]  The jury returned verdicts of guilty for Count I, Intimidation, as a Level 6 felony, and Count II, Domestic Battery, as a Level 6 felony, and the court sentenced Newsom accordingly.  Newsom now appeals the Intimidation conviction.

# Discussion and Decision

## Sufficiency of the Evidence

[14]  Newsom challenges the sufficiency of the evidence to support his conviction of Intimidation, as a Level 6 felony.

When reviewing a claim that the evidence is insufficient to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses.  *Harrison v. State*, 32 N.E.3d 240, 247 (Ind. Ct. App. 2015), *trans. denied*.  We instead respect the exclusive province of the trier of fact to weigh any conflicting

evidence. *Id.* We consider only the probative evidence supporting the verdict and any reasonable inferences that may be drawn from this evidence. *Id.* We will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

*Merriweather v. State*, 128 N.E.3d 503, 514-15 (Ind. Ct. App. 2019), *trans. denied*. "A defendant's intent may be proven by circumstantial evidence alone, and knowledge and intent may be inferred from the facts and circumstances of each case." *Chastain v. State*, 58 N.E.3d 235, 240 (Ind. Ct. App. 2016), *trans. denied*; *see also Tin Thang v. State*, 10 N.E.3d 1256, 1258 (Ind. 2014) (noting a verdict of guilt may be based upon an inference if reasonably drawn from the evidence).

[15] To prove Newsom committed Intimidation, as a Level 6 felony, the State was required to prove beyond a reasonable doubt that: (1) Newsom; (2) communicated a threat; (3) to Haley; (4) to commit a forcible felony; (5) with the intent that Haley be placed in fear of retaliation for a prior lawful act. *See* I.C. § 35-45-2-1(a)(2), (b)(1)(A). Newsom only challenges the sufficiency of the evidence to prove the fifth element of the crime, i.e., that he intended to place Haley in fear of retaliation for her prior lawful act of calling 9-1-1. Specifically, he contends that his threat to kill Haley after learning that she called 9-1-1 was the same as his many threats to kill her before she called 9-1-1; therefore, he contends, there was insufficient evidence that his last threat was in retaliation for calling 9-1-1.

[16]     When determining the sufficiency of evidence under the intimidation statute at issue here, the conviction "should not depend upon a precise parsing of the threatening language used by a defendant or a detailed timeline of when a threat was issued in relation to a prior lawful act." *Merriweather*, 128 N.E.3d at 516. Rather, "[w]hat is required is that there be a clear nexus between the prior lawful act and the defendant's threat." *Id.* Here, the State provided proof—and Newsom does not deny—that Newsom threatened Haley's life moments after learning that she had called 9-1-1. That was sufficient evidence from which the jury could reasonably infer that Newsom threatened Haley's life with the intention that she be placed in fear of retaliation for calling 9-1-1, a lawful act.[5] *See, e.g.*, *Chastain*, 58 N.E.3d at 240 (upholding intimidation conviction where there was evidence of a victim's "distinct lawful act," followed by defendant's threat to victim).

## Jury Instructions

[17]     Newsom maintains that his intimidation conviction must be reversed because it is impossible to tell whether the jury based its verdict on the threats that occurred before or after Haley's 9-1-1- call. He maintains that this uncertainty

---

[5] The cases Newsom cites in support of his sufficiency argument are readily distinguishable on the facts. In *Blackmon v. State*, 32 N.E.3d 1178 (Ind. Ct. App. 2015), and *Casey v. State*, 676 N.E.2d 1069 (Ind. Ct. App. 1997), the State had failed to provide sufficient evidence of a prior lawful act. And in *Ransley v. State*, 850 N.E.2d 443 (Ind. Ct. App. 2006), *trans. denied*, the threat related to a future lawful act, not a prior lawful act. Here, it is undisputed that Hanely called 9-1-1 and Newsom threatened her life immediately upon learning of the 9-1-1 call.

violates the rule that a jury must unanimously agree which of defendant's acts was the criminal act, citing *Richardson v. United States*, 526 U.S. 813 (1999).

[18] We review a trial court's instructions to the jury for an abuse of discretion. *E.g.*, *Merriweather*, 128 N.E.3d at 512.

> To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. We will consider jury instructions as a whole and in reference to each other, not in isolation.

*Id*. (citations omitted). Furthermore, "[a]bsent evidence to the contrary, we generally presume the jury follows the trial court's instructions in reaching its determination." *Gibson v. State*, 43 N.E.3d 231, 241 n.5 (Ind. 2015).

[19] Newsom waived his challenge to the jury instructions by failing to object to them at trial. *See, e.g.*, *Baker v. State*, 948 N.E.2d 1169, 1178 (Ind. 2011) ("A defendant who fails to object to an instruction at trial waives any challenge to that instruction on appeal.") (quotation and citation omitted). We will review an issue that was waived at trial only for fundamental error.

> In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. *Pope v. State*, 737 N.E.2d 374, 380 (Ind. 2000). The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. *Id*.

*Id*. at 1178-79.

[20] Newsom has not claimed, much less shown, fundamental error in the jury instructions. While Newsom claims it is possible that the jury based its intimidation verdict on threats other than the ones that followed Haley's 9-1-1 call, he points to no evidence in support of that contention. Rather, the trial court specifically instructed the jury that it could only convict Newsom of the intimidation charge if it found that Newsom intended to place Haley "in fear of retaliation for a *prior lawful act, to-wit: calling 911*." Instruction 13.05, App. at 36 (emphasis added); *see also* Instruction 6.0200, App. at 37 ("If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Intimidation a Level 6 Felony, charged in Count 1.").

[21] Newsom asserts the jury could have been misled by Instruction 14.4120 because it laid out all the statutory definitions of "threat" rather than stating only the definition of threat that applied in this particular case, i.e., a threat to unlawfully injure the person threatened. Thus, he contends, the jury could have based its verdict on a threat to restrain Haley or a threat to commit a crime that was made before Haley called 9-1-1. However, even assuming there was evidence of such a threat, the jury was instructed to consider all of the instructions together. Instruction 13.05 specifically limited the threat to one to "commit a forcible felony, to-wit: murder," App. at 36, and Instruction 14.1780 defined "forcible felony" as "use or threat of force against a human being, or in which there is an imminent danger of bodily injury to a human being," *id*. at 38. And, as already discussed, the jury was instructed to consider only the threat made after Haley's lawful act of calling 9-1-1. Thus, the only

threat the jury was instructed to consider was the one in which Newsom threatened Haley's life upon learning of her 9-1-1 call.

[22] Newsom has pointed to no fundamental error in the jury instructions and no evidence to rebut our general presumption that the jury followed the instructions it was given.

# Conclusion

[23] The State presented sufficient evidence to support Newsom's conviction of Intimidation, as a Level 6 felony. And Newsom has not shown fundamental error in the jury instructions.

[24] Affirmed.

Vaidik, J., and Baker, Sr. J., concur.